SLIP OPINION

Cite as 2016 Ark. App. 485

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-16-437

| | |
|---|---|
| | **Opinion Delivered** October 19, 2016 |
| JILL MCGAUGH <br>                     APPELLANT <br><br> V. <br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN <br>                     APPELLEES | APPEAL FROM THE LITTLE RIVER COUNTY CIRCUIT COURT [NO. 41JV-14-69] <br><br> HONORABLE TOM COOPER, JUDGE <br><br> AFFIRMED; MOTION TO WITHDRAW GRANTED |

## LARRY D. VAUGHT, Judge

This appeal arises from the circuit court's February 25, 2016 order terminating the parental rights of Jill McGaugh to G.C. (born 4-20-12) and A.M. (born 8-26-14).[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2016), McGaugh's counsel has filed a motion to be relieved and a no-merit brief asserting that there are no issues of arguable merit to support an appeal.[2] Counsel's brief contains an abstract and addendum of the proceedings below,

---

[1] The order also terminates the parental rights of Ferrell Collins, the legal father of G.C., and Marcus Leslie, the putative father of A.M. Collins and Leslie are not parties to this appeal.

[2] The clerk of this court attempted to deliver to McGaugh, by certified mail, a packet with a copy of her attorney's motion and brief, along with a letter informing her of her right to file pro se points for reversal in the case. The packet, sent to McGaugh's last-known address, was not delivered or returned to the clerk's office. The clerk attempted to deliver the packet a second time, and the certified packet was returned to the clerk's office marked "Return to sender, unable to forward." No pro se points have been filed.

SLIP OPINION

discusses the adverse rulings, and explains that there is no meritorious ground for reversal. *See Linker-Flores, supra*; Ark. Sup. Ct. R. 6-9(i). We affirm the order terminating McGaugh's parental rights and grant counsel's motion to withdraw.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 2, 451 S.W.3d 231, 233. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(B), (b)(3)(A) (Repl. 2015); *Harbin*, 2014 Ark. App. 715, at 2, 451 S.W.3d at 233.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, at 6, 396 S.W.3d 272, 276. The grounds for termination of parental rights must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, at 2. When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, the reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. 356, at 7.

SLIP OPINION

Arkansas Supreme Court Rule 6-9(i)(1) allows counsel for an appellant in a termination case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The petition must include an argument section that "shall list all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by the party at the hearing from which the appeal arose and explain why each adverse ruling is not a meritorious ground for reversal." Ark. Sup. Ct. R. 6-9(i)(1)(A). Additionally, the petition's abstract and addendum "shall contain all rulings adverse to the appellant" made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(i)(1)(B). Here, counsel explains in her no-merit brief that any argument challenging the statutory grounds for termination or the circuit court's best-interest finding would be wholly frivolous. She also explains that there was only one other adverse ruling—the circuit court's denial of a motion for continuance—and that there is no meritorious ground for reversal on that ruling.

After exercising a hold on the children and placing them in foster care, on November 18, 2014, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect. The accompanying affidavit stated that on August 27, 2014, DHS received a report that McGaugh had tested positive for opiates following the birth of A.M. and that she had admitted methamphetamine use throughout her pregnancy. A child-protective-services case was opened on the family. On November 11, 2014, DHS representatives made a weekly visit to McGaugh's home and were informed by her parents, Marilyn Newton and Alvin McGaugh, that McGaugh had been incarcerated the day before and that they would not be able to care for the children after December 1, 2014. Marilyn stated

that McGaugh had been abusing methamphetamine in the past months, threatening them, and vandalizing their home. They also admitted that they had been covering for her when DHS had attempted to locate her or provide services. Two days later, when DHS representatives interviewed McGaugh in the detention center, she reported that she did not know how long she would be incarcerated and that she believed her parents would care for her children. DHS representatives returned to McGaugh's parents the following day, and they confirmed that they would not be willing to care for G.C. and A.M.

On November 18, 2014, the court entered an ex parte order for emergency custody. In a December 30, 2014 order, the circuit court found probable cause that the emergency conditions necessitating G.C. and A.M.'s removal from McGaugh's custody continued and that it was contrary to their welfare to be returned home. The juveniles were adjudicated dependent-neglected on March 16, 2015, due to McGaugh's incarceration with no appropriate persons willing to provide for their care and custody; their mother's drug use while pregnant with A.M.; and her sentence to seven years' imprisonment on December 1, 2014. The circuit court noted that McGaugh's parents had changed their mind about caring for the children; however, the court did not authorize placement with them due to concerns about Marilyn Newton's criminal history, child maltreatment, drug abuse, lack of income, and lack of adequate space for the children. At a June 2015 review hearing, the circuit court found that DHS had made reasonable efforts to provide services and that McGaugh had not complied with the case plan or the court's orders. The goal of the case continued to be reunification.

DHS filed the petition for termination of parental rights on July 6, 2015. The petition set forth three statutory grounds for terminating parental rights applicable to McGaugh: (1)

other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent; (2) the parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life; and (3) the parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to have subjected any juvenile to aggravated circumstances.[3] Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*, (viii), (ix)*(a)(3)(A)*. The petition also alleged that termination of parental rights was in the juveniles' best interest.

At the termination hearing held on February 2, 2016, DHS caseworker Alexis Lampkins testified that except for attending one parenting class, McGaugh had completely failed to comply with the case plan and had not reached the goal of reunification. She stated that during the period of time in which McGaugh was not incarcerated, September–November 2015, the department scheduled a drug-and-alcohol assessment, a psychological evaluation, and counseling; however, McGaugh had failed to attend the appointments. Lampkins added that McGaugh had failed to secure stable housing and employment, she had missed several visits with the children, she had failed to maintain contact with DHS, and she had failed to support the children.

---

[3] "Aggravated circumstances" means a determination has been made or is made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*.

DHS adoption specialist Lisa Forte testified that G.C. and A.M. are adoptable and that there were several adoptive placements for the children. Linda Larey, a CASA volunteer, stated that G.C. and A.M. were thriving in their foster placements. In recommending termination, Larey said that the children had been in foster care for over one year—most of A.M.'s life—and that they needed a permanent placement.

McGaugh testified that DHS became involved with her family in August 2014 when she tested positive for drugs following the birth of A.M. She said that her children were removed from her custody in November 2014 when she was incarcerated for a probation violation and was sentenced to seven years' imprisonment. She conceded that she did not complete any services while incarcerated. She stated that she was released from prison in September 2015 and was aware that she was required to comply with the DHS case plan. She said that she completed parenting classes and visited her children, but she conceded that she did not attend the psychological evaluation or counseling.

McGaugh further testified that she was currently incarcerated for another probation violation and that she had been incarcerated twelve of the past fifteen months. She stated that she expected to be released on March 22, 2016, and had no housing (but for her plan to live in a halfway house), no employment, and no transportation. While admitting to past drug addictions, which included opiates, methamphetamine, and marijuana, she testified that drug screens performed by her probation officer since being released in September 2015 were negative.

On February 26, 2016, the circuit court entered an order granting DHS's petition to terminate McGaugh's parental rights. The circuit court found that six grounds supported

termination: (1) Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*—the failure-to-remedy ground; (2) Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)*(a)*—the failure-to-provide-significant-support ground; (3) Ark. Code Ann. § 9-27-341(b)(3)(B)(iv)—the abandonment ground; (4) the other-factors ground; (5) the sentenced-in-a-criminal-proceeding ground; and (6) the aggravated-circumstances ground. The circuit court further found that it was in the best interest of the children to terminate McGaugh's parental rights. The court specifically considered the testimony of the adoption specialist and the potential harm to the health and safety of the children caused by returning them to McGaugh.

At the onset of her argument, counsel points out that the circuit court found that DHS had proved six grounds supporting termination despite the fact that DHS alleged only three grounds in its petition. In *Jackson v. Arkansas Department of Human Services*, 2013 Ark. App. 411, at 6–7, we held that the circuit court's reliance on a ground not pled in DHS's termination petition of father's parental rights was clearly erroneous. This is not a meritorious ground for reversal, however, because only one ground need be proved to support termination, *Sims v. Arkansas Department of Human Services*, 2015 Ark. App. 137, at 7, and the circuit court found that DHS proved, by clear and convincing evidence, all three grounds alleged in the termination petition.

Counsel continues by adequately explaining why the circuit court did not clearly err in finding that the aggravated-circumstances ground supported termination. McGaugh testified that she was well aware of the requirements of the case plan, yet she failed to complete any of it. She said that she had been incarcerated twelve of the past fifteen months and three times in the last three years. On one occasion, she was imprisoned for violating her probation only

three months after having been released because she had failed to report to her probation officer. She was incarcerated at the time of the termination hearing for another probation violation—failing to provide an address to her probation officer. She said that she expected to be released from prison in March 2016, yet she had no housing, employment, or transportation arranged or available. While imprisoned, she failed to complete services. During the short periods of release from prison, McGaugh failed to obtain stable housing, employment, or transportation. She failed to attend scheduled counseling, a psychological evaluation, and a drug-and-alcohol assessment; she missed visits with her children; she attended only one parenting class; and she failed to maintain contact with DHS.

In sum, this evidence demonstrates that McGaugh has consistently failed to follow the rules of her probation and to follow the requirements of her case plan. A parent's past behavior is often a good indicator of future behavior. *Harbin*, 2014 Ark. App. 715, at 2, 451 S.W.3d at 232. Accordingly, we hold that clear and convincing evidence supports the circuit court's finding of aggravated circumstances; specifically, that there was little likelihood that services to McGaugh would result in successful reunification.

Counsel further argues that it would be frivolous to challenge the circuit court's best-interest finding. We agree. There was testimony from an adoption specialist that G.C. and A.M. are adoptable. The children have spent fifteen months in DHS care; they are thriving in foster care; McGaugh has been incarcerated twelve of the past fifteen months; she has no plan for housing, employment, or transportation upon her release, whenever that may be; and based on her history, there is a question as to how long her release will last. In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of likely

potential harm should the child be returned to the parent's care and custody. *Harbin*, 2014 Ark. App. 715, at 2–3, 451 S.W.3d at 233. Therefore, we hold that the circuit court's finding that termination of McGaugh's parental rights were in her children's best interest is not clearly erroneous.

The only other adverse ruling was the circuit court's denial of McGaugh's motion for continuance of the February 2, 2016 termination hearing. McGaugh's counsel argued that a continuance was necessary because McGaugh expected to be released from prison on March 22, 2016, and needed additional time to complete the case plan. In denying the motion, the circuit court found that the hearing had been continued twice and that the court had the responsibility to try these cases within a certain amount of time.

A motion for continuance should be granted only upon a showing of good cause. *Martin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 407, at 4, 465 S.W.3d 881, 883. We will not reverse a denial of a motion for continuance absent an abuse of discretion amounting to denial of justice. *Id.*, 465 S.W.3d at 883. Lack of diligence by the moving party is a sufficient reason to deny a motion for continuance. *Id.*, 465 S.W.3d at 883–84. Additionally, we will not reverse absent a showing of prejudice from the denial of the motion for continuance. *Id.*, 465 S.W.3d at 883–84.

Here, the circuit court did not abuse its discretion, and McGaugh cannot demonstrate prejudice. McGaugh did not request the continuance until the beginning of the termination hearing, which demonstrated a lack of diligence sufficient to support the denial. *Id.* at 4, 465 S.W.3d at 884–85. Moreover, the record reflects that the circuit court had already granted two continuances to McGaugh. Finally, there was no prejudice because McGaugh's past behavior

SLIP OPINION

indicated that, even if the court allowed a continuance until she was released from prison, she was not likely to follow through with all of the steps necessary for reunification. *Id.*, 465 S.W.3d at 885. Therefore, we hold that the circuit court did not abuse its discretion in denying the motion for continuance.

Based on our de novo review of all the relevant evidence and our examination of the record and the brief before us, we conclude that the circuit court did not clearly err in terminating McGaugh's parental rights to G.C. and A.M. We therefore affirm the order of termination and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

HIXSON and BROWN, JJ., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.

No response.