....
Throughout the case, the court found that children needed to be separated, yet at no time during the termination hearing was any testimony introduced regarding the likelihood that J.F. and K.F. could be adopted together-or whether it was in their best interest not to be adopted together, as well as their prospects to be adopted together given J.F.'s issues-despite there being
testimony and documentary [evidence] that resuming sibling visits would be beneficial to both children. A complete lack of evidence can never be sufficient evidence of something.... Sibling groups matter, DHS's burden at trial matters.
She asks us to "make good" on our warning in Renfro v. Arkansas Department of Human Services , 2011 Ark. App. 419 at 8 n. 3, 385 S.W.3d 285, 289 n. 3, that "bare minimum" evidence is not sufficient concerning the adoptability prong of best interest.
DHS responds that it does not have to prove the likelihood or probability of adoption. "Rather, there must be evidence presented and the trial court must consider that evidence. That's all. To set the bar higher would unfairly punish children with special needs or developmental disabilities who need permanency-especially if the behavior and development issues are a direct result of the parent's inattention and unfitness-as in this case." DHS cites McDaniel v. Arkansas Department of Human Services , 2013 Ark. App. 263, 2013 WL 1776479, arguing that even if a child is unlikely to be adopted, it can still be in his or her best interests to terminate the parents' rights. "DHS is not required to disprove all possible barriers to adoption, such as behavioral issues, with clear and *176 convincing evidence." The circuit court is required only to weigh the evidence of adoptability.
Under Arkansas law, to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)-(ii). While the likelihood of adoption must be considered by the circuit court, that factor is not required to be established by clear and convincing evidence. Hamman v. Ark. Dep't of Human Servs. , 2014 Ark. App. 295, at 9, 435 S.W.3d 495, 501. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. Caldwell v. Ark. Dep't of Human Servs. , 2016 Ark. App. 144, at 5, 484 S.W.3d 719, 722. Adoptability is not an essential element of proof. McDaniel , 2013 Ark. App. 263. The statute does not require any "magic words" or a specific quantum of evidence regarding a child's adoptability but simply provides that the circuit court consider the likelihood that the child will be adopted in making its best-interest determination. Sharks v. Ark. Dep't of Human Servs , 2016 Ark. App. 435, 502 S.W.3d 569 ; see also Renfro , 2011 Ark. App. 419, at 10, 385 S.W.3d at 290 ("neither the statute nor our case law requires any specific quantum of evidence [on adoptability]").
In this case, the circuit court did not have the benefit of the 2017 DHS report on foster care and adoption that Carrie cites in her brief, because it was not entered as evidence into the record. An appellate court does not consider matters outside the record, and it is an appellant's burden to bring up a record sufficient to demonstrate error. Dep't of Career Educ., Div. of Rehab. Servs. v. Means , 2013 Ark. 173, 426 S.W.3d 922. In this case, the circuit court heard the evidence of adoptability, the evidence that J.F. and K.F. would likely not be together, the evidence that J.F. had significant behavioral and mental-health issues, and the evidence of the parents' major drug problems and instability, and weighed the evidence in favor of termination. We cannot say that the circuit court erred in finding that termination of parental rights was in J.F. and K.F.'s best interest.
III. Michael Fisher
Michael argues on appeal that DHS produced insufficient evidence of any termination ground and that a termination was not in the children's best interest.
We affirm the termination of Michael's parental rights on the subsequent-factors ground, which is a statutory ground that DHS pled and the circuit court found. This ground requires clear and convincing proof that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a ). Termination of parental rights is a drastic remedy that is necessary to provide permanency in a juvenile's life in circumstances in which return to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence *177 that return to the family home cannot be accomplished in a reasonable period as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). That means that a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. Fredrick v. Ark. Dep't of Human Servs. , 2010 Ark. App. 104, 377 S.W.3d 306.
In this case, Robert Hammond, a substance abuse counselor, submitted a letter to the court that stated Michael had completed an assessment in February 2017, almost a year into the case. The result of the assessment was a recommendation of two (12-week) outpatient services to address Michael's psychiatric issues and substance abuse. Michael did not comply with the outpatient recommendation, did not return phone calls or written correspondence and tested positive for methamphetamine. As stated in the facts above, Michael pretty much failed to follow any court order throughout the entire case. There was other testimony that before February 2017, he had few visits with the children, he had not addressed substance-abuse issues, had not maintained stable housing, and had not participated in counseling services. During the termination hearing, he testified that he was waiting on disability benefits and that he did not know how long it would be before he could support his children. The circuit court's decision to terminate his parental rights on the subsequent-factors ground was not clearly erroneous.
As far as best interest, Michael does not challenge the court's adoptability finding as to K.F., but he does as to J.F. Michael's argument about J.F.'s best interest is like the argument Carrie made on the lack of adoptability evidence of J.F. We affirm for the same reasons we gave earlier in the opinion. The circuit court heard the evidence of adoptability, the evidence that J.F. and K.F. would likely not be together, the evidence J.F. has significant behavioral and mental-health issues, the evidence of the parents' major drug problems and instability, and weighed the evidence in favor of termination. We cannot say that the circuit court clearly erred in deciding that terminating Michael's rights was in J.F.'s best interest.
Affirmed.
Gruber, C.J., and Virden, J., agree.