They are mine and nobody will ever have the power to take my mother or anybody else I care about away from me.
....
Any and all mistakes I have made in the past and may make in the future have nothing to do with my mother or my family. I made these mistakes on my own, by my own will without any outside force. It doesn't matter what any of you say or think because that is the plain, simple, pure truth, undiluted by your thought & actions.
....
What little precious time I have on Earth, especially as a teenager, with the ones I love [is] slowly but surely being taken away. I don't want that though being in care did teach me a few things & gave me some new people to love. I just don't know anymore. It's hard and unnecessary[.] I know that some kids don't want to [go] home or are scared to. But if you haven't figured it out yet, I am not even close to being one of those kids.
III. Trial Court's Order
The trial court terminated Strickland's parental rights on grounds including twelve-month failure to remedy, other subsequent factors, and aggravated circumstances. The trial court made the following best-interest finding:[2]
The court finds that (A) the juveniles [sic] are adoptable. The Court specifically finds that adoption is likely due to the personality of the juveniles [sic]. There are no physical, mental or educational issues that would impede adoption. The Court finds that (B) the juvenile would be at substantial risk of serious emotional, mental and physical harm if returned to the parents due to the parent's failing to remedy the situation that brought the juveniles [sic] into care. The parents have not complied with their case plan, have not completed drug treatment, not had counseling, and their drug issues and criminal activity is severe. The juvenile would be in great risk of harm if returned to the custody of the parent. The Court further finds the risk of harm is so great, as to outweigh any potential issues of adoptability.
*876 IV. Standard of Review
We review termination-of-parental-rights cases de novo. Hall v. Ark. Dep't of Human Servs. , 2018 Ark. App. 4, 2018 WL 343621. An order forever terminating parental rights must be based on a finding by clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). The trial court must consider the likelihood that the child will be adopted if the parent's rights are terminated and the potential harm that could be caused if the child is returned to a parent. Id. The trial court must also find by clear and convincing evidence one or more grounds for termination. Id. When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding is clearly erroneous. McGaugh v. Ark. Dep't of Human Servs. , 2016 Ark. App. 485, 505 S.W.3d 227. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In resolving the clearly erroneous question, we defer to the trial court because of its superior opportunity to observe the parties and judge the credibility of witnesses. Id.
V. Discussion
Strickland does not challenge the grounds for termination. Instead, she argues that termination was not in C.H.'s best interest. Specifically, she argues that the evidence of adoptability was insufficient, that the trial court erred in finding that adoptability made no legal difference, that statistics show that adoption is not in C.H.'s best interest, and that the goal of adoption for C.H. does not fulfill the Juvenile Code's purpose of providing permanency. Strickland relies on two cases in which this court reversed a trial court's best-interest finding: Caldwell v. Arkansas Department of Human Services , 2010 Ark. App. 102, 2010 WL 374432, and Lively v. Arkansas Department of Human Services , 2015 Ark. App. 131, 456 S.W.3d 383. Neither case, however, is on point because C.H. does not already have a permanent, stable home with a parent, and there was evidence that her current placement wants to adopt her.
Adoptability is not an essential element of proof in a termination case. McDaniel v. Ark. Dep't of Human Servs. , 2013 Ark. App. 263, 2013 WL 1776479. It is but one factor to be considered when making a best-interest determination. McNeer v. Ark. Dep't of Human Servs. , 2017 Ark. App. 512, 529 S.W.3d 269. While the likelihood of adoption must be considered by the trial court, that factor is not required to be established by clear and convincing evidence. Fisher v. Ark. Dep't of Human Servs. , 2017 Ark. App. 693, 542 S.W.3d 168. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. Id.
There was sufficient evidence from which the trial court could consider the likelihood that C.H. will be adopted. Deaton testified that C.H. is adoptable and that her current placement is interested in adopting her. Sallee testified that C.H. had been open to the possibility of adoption but that things had changed. She did not elaborate on what had changed C.H.'s mind. In C.H.'s letter, she said that, although she wanted to be back with her family, she "wasn't saying no to Becca's." Rebecca Wells is C.H.'s foster mother. In the order terminating Strickland's parental rights, it is clear that the trial court considered the likelihood of C.H.'s adoption. The trial court said that C.H. has a good personality and that she has no physical, mental, or emotional barriers to adoption. We cannot say that the trial court clearly erred in its best-interest finding.
*877 Strickland also argues that the trial court erred in finding that adoptability made no legal difference. In Haynes v. Arkansas Department of Human Services , 2010 Ark. App. 28, 2010 WL 135194, this court said that "[c]onsideration [of the likelihood of adoption] requires evidence, ... or at least some finding by the trial court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal difference." Id. at 4. We disagree with Strickland's contention that the trial court found that adoptability made no legal difference. Indeed, the trial court specifically found that C.H. is adoptable. It then alternatively noted that, even if there were potential adoptability issues, it was not in C.H.'s best interest to be returned to Strickland's custody because the risk of harm was so great.
Strickland further contends that termination was not in C.H.'s best interest because the chances that she will age out of the system are just too great. Deaton testified that some teenagers with problems get adopted, while others age out of the system, and that "the number that is greater is probably aged out." Strickland points to both a study conducted by the legislature and statistics from DHS's Division of Children and Family Services (DCFS). Specifically, she cites the legislature's study raising concerns about the high number of terminations involving teenagers and the risk of their aging out of the system as legal orphans. She also cites DCFS's statistics showing that adoption for teenagers like C.H. should be recommended only in dire circumstances. Strickland failed to raise this study and these statistics below, so we do not address them for the first time on appeal. See, e.g. , Fisher , supra (refusing to consider a 2017 DHS report on foster care and adoption because it was not entered into evidence).
Finally, Strickland asserts that the goal of adoption does not meet the purpose of the Juvenile Code to provide permanency for C.H. and that APPLA is the more appropriate goal, would better serve C.H.'s needs, and would keep the family intact. APPLA is a goal to be set at a permanency-planning hearing, and this case is now at the appeal stage from the termination of parental rights. With that said, the trial court did set APPLA as a concurrent goal at the fifteen-month review hearing, but C.H. was only fifteen years old at the time. APPLA is available only if the child is sixteen years of age or older. Ark. Code Ann. § 9-27-338(c)(7)(B)(ii). Besides, adoption and termination of parental rights is favored before APPLA in terms of permanency-planning goals. Ark. Code Ann. § 9-27-338(c)(4) & (7). Here, there is a foster family that wants to adopt C.H., which would provide her permanency in accordance with the Code's purpose. See Ark. Code Ann. § 9-27-341(a)(3) ("The intent of this section [termination of parental rights] is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective."). Strickland states that adoption, as opposed to APPLA, will prevent C.H. from gaining access to resources for independent living, but she did not raise or develop this argument below; therefore, we do not consider it. Edwards , supra.
Affirmed.
Abramson and Hixson, JJ., agree.

Strickland's counsel asserts that C.H. was "prohibited" from attending the hearing and "[i]ndeed, the court's failure to ensure [C.H.'s] attendance, given her desire to express to the court her strong opinions about the case and about her life, warrants a reversal as it seriously calls into question whether the court could make a valid 'best interest' finding without C.H.'s participation." No objection was raised below. Edwards v. Ark. Dep't of Human Servs. , 2016 Ark. App. 37, 480 S.W.3d 215 (declining to consider on appeal an argument not raised below). Moreover, C.H.'s therapist suggested that C.H. preferred to be heard through her letter.