SLIP OPINION

Cite as 2015 Ark. App. 556

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–415

| | |
|---|---|
| ROY McMAHAN<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** OCTOBER 7, 2015<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. J-12-838]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## DAVID M. GLOVER, Judge

Roy McMahan appeals from the termination of his parental rights to his son, J.M., who was born on April 4, 2011.[1] McMahan does not challenge the grounds the trial court employed to terminate his parental rights. Rather, he challenges the sufficiency of the evidence supporting the trial court's finding that termination was in J.M.'s best interest. McMahan further contends that the trial court erred in terminating his parental rights because the trial court denied his motion for change of venue (which he now characterizes as one for recusal) and because he claims he should have been provided with additional reunification services after his case was reversed for noncompliance with service requirements in the original appeal. J.M.'s mother consented to the termination of her parental rights and is not

---

[1]This case was before us once before, and we reversed and dismissed based on noncompliance with service requirements. *McMahan v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 590.

a party to this appeal.  We affirm.

The facts involved in this case are not in serious dispute, and a brief history helps to put them in context.  J.M. was removed from his home in January 2012 when he was nine months old.  At that point, McMahan's paternity had not been established, but the family had been under a protective-services case since November 2011.  J.M. was adjudicated dependent–neglected in January 2012. Among other problems within the family, McMahan and the mother were using methamphetamine; McMahan also tested positive for THC. McMahan and the mother both acknowledged that there had been domestic violence between them, with the children present. [2]

In February 2012, temporary custody of J.M. was returned to the mother, and in April 2012, McMahan was found to be J.M.'s biological father.  In May 2012, J.M. and his siblings returned to DHS custody because the mother failed to complete her program at Arkansas Cares.  J.M. was not placed with McMahan, even though by that time McMahan had been determined to be J.M's biological father.  During this same period of time, McMahan was ordered to pay child support and was found to owe back support of a little over a thousand dollars.

McMahan and the mother moved from Boone County to Washington County, and the children were transferred from their Boone County foster placements to foster homes in

---

[2] Ray McMahan is the biological father of only one of the children, J.M., who is the only child involved in this case.

SLIP OPINION

Washington County. In late January 2013, J.M. and his siblings returned to McMahan's and the mother's custody after their completion of drug treatment. McMahan and the mother told the trial court that things were going well, but McMahan later acknowledged to the trial court that he had lied in representing that the mother had faltered only once with her abstinence from drug usage. In February 2013, J.M. and his siblings were once again returned for placement because the mother had attempted suicide, and McMahan had been arrested for committing battery against the mother.

McMahan was incarcerated from February 15, 2013, until he was released from prison in February 2014. Though his parental rights were originally terminated by order entered on February 14, 2014, the termination was overturned on appeal to this court on October 29, 2014, based upon improper service. *See supra* n.1. The mandate was issued on November 13, 2014. On December 15, 2014, a joint petition for termination of McMahan's parental rights was filed by the Department of Human Services (DHS) and the attorney ad litem, and, following a hearing on the petition, McMahan's rights were again terminated by order filed February 18, 2015, with this appeal following.

We first address McMahan's challenge to the trial court's best-interest finding. Arkansas Code Annotated section 9-27-341(b)(3) provides in pertinent party that

> (3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:
>
> (A) That it is in the best interest of the juvenile, including consideration of the following factors:

SLIP OPINION

> (i) The likelihood that the juvenile will be adopted if the termination petition is granted; and
>
> (ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and

(B) Of one (1) or more of the following grounds . . . .

As noted previously, McMahan does not challenge the trial court's findings regarding the statutory grounds for termination, so we have omitted that portion of the statute above. He challenges only the best-interest determination. And even with respect to that determination, he acknowledges that the trial court's finding that J.M. is very likely to be adopted is supported by sufficient evidence. That leaves the "potential harm" prong of the trial court's best-interest finding, and we find no clear error.

Arkansas Code Annotated sections 9-27-341(a)(3) and (4) provide as follows:

> (3) The intent of this section is to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective.
>
> (4)(A) A parent's resumption of contact or overtures toward participating in the case plan or following the orders of the court following the permanency planning hearing and preceding the termination of parental rights hearing is an insufficient reason to not terminate parental rights.
>
> (B) The court shall rely upon the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing in making its decision whether it is in the juvenile's best interest to terminate parental rights.

The statutory scheme for termination of parental rights makes it clear that the trial court is

to consider the entire history of a dependency-neglect case in evaluating whether it is in the child's best interest to terminate parental rights. The trial court reviewed the entire history of this case, in addition to the evidence presented at the second termination hearing.

J.M. was born on April 4, 2011, and has lived outside McMahan's home for more than thirty-two months—a majority of J.M.'s life. J.M. was only nine months old when he first entered foster care. Since the protective-services case was opened in November 2011, McMahan has tested positive for methamphetamine and marijuana. Since the January 6, 2012 petition for dependency-neglect, J.M. and his siblings had to be removed from a trial home placement when McMahan left them in the mother's care, knowing she was still abusing illegal drugs and having lied to the court about her well-being when she attempted suicide. After the children entered DHS custody for the third time in February 2013, McMahan was arrested for domestic battery against the mother and was subsequently incarcerated for a year.

McMahan acknowledged at the February 18, 2015 termination hearing that he had not visited J.M. since February 2013. Even though his incarceration for a year explains much of his absence from the child's life in that period, the fact remains that, for a majority of J.M.'s life, McMahan has not been a part of it. In contrast, there was testimony that J.M. is thriving in his foster placement. In addition, the trial court had before it evidence that McMahan owed a significant amount of back child support; had stopped taking his prescribed medications for posttraumatic stress syndrome (PTSD); and had tested positive for

oxycodone, admitting that he had taken a friend's medication.

Having reviewed the evidence that the trial court had before it in assessing the potential harm of returning J.M. to McMahan's custody, we are not left with a definite and firm conviction that the trial court made a mistake in concluding that continued contact with McMahan could cause the child to suffer potential harm.

We next address McMahan's contention that the trial court erred in denying his motion "to recuse." The problem with his argument is that the motion he filed below was for change of venue, not recusal. In addition, to the extent that he mentioned in his testimony that he did not think he could get a fair trial in Washington County and that he thought the trial court judge might be "a little biased" in light of the first termination order being reversed for improper service, those comments do not rise to the level of requesting recusal. McMahan's counsel made it clear that what he was really arguing was that he thought he could get more adequate services in the county where he lived, which at that time was Searcy County. Because his recusal arguments are being raised for the first time on appeal, they are not properly preserved, and we will not address them. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).

Finally, McMahan contends that the trial court erred in denying him appropriate reunification services. The foundation for this argument is his contention that when the original termination order was reversed for defective service, his parental rights were reinstated, and he was automatically entitled to services, even without a court order. He

6

asserts DHS should have reassessed his circumstances after the reversal of termination and provided him with additional reunification services. We find no basis for reversal with this argument.

First, as we previously noted, McMahan does not challenge the statutory grounds for termination that were found to exist in the instant case. McMahan does not challenge adoptability under "best interest," and we have found no clear error in the trial court's "potential harm" finding that he does challenge. The statutory requirements for termination of McMahan's parental rights have been satisfied. McMahan acknowledges that, even when this court reversed the earlier termination order, a no-contact order remained in place, prohibiting contact between him and J.M. That would be the second permanency-planning order, as the last standing order, and it governed after the termination order was reversed on appeal. Under the second permanency-planning order, adoption was the case goal and no contact between J.M. and McMahan was ordered, with the trial court specifically finding that McMahan had not complied with any of the court orders or the case plan.

Finally, once McMahan was paroled, a case plan was created by his secondary caseworker in Searcy County. McMahan was not ignored by DHS following his release from prison and the reversal of the first termination order; neither could DHS be expected to ignore the entire history of the case up to that point either. Over the entire time that J.M. was in foster care, several reunification services were provided, including home visits, medical and dental services, foster homes, transportation, PACE evaluations, developmental therapies,

play therapies, counseling, daycare assistance, supervised visitations, case-management services, case plan, and staffings. McMahan did not get to wipe his slate clean after the reversal of the original termination order (based on noncompliance with the service requirements). There is a long, troubled history in this case; it remained in place after the reversal. We are in no way convinced that the level of services provided to McMahan provides any basis for overturning the termination of his parental rights.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Mischa K. Martin*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.