

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-17-518

TIFFANY CHANDLER-SIVAGE
APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILDREN
APPELLEES

**Opinion Delivered:** October 25, 2017

APPEAL FROM THE SEBASTIAN
COUNTY CIRCUIT COURT,
FORT SMITH DISTRICT
[NO. 66FJV-15-486]

HONORABLE SHANNON L.
BLATT, JUDGE

AFFIRMED

## RITA W. GRUBER, Chief Judge

Tiffany Chandler-Sivage (hereinafter Chandler) brings this appeal from the order of the Sebastian County Circuit Court, entered on March 21, 2017, that terminated her parental rights to her children K.A. (born on June 9, 2005) and C.C. (born March 24, 2012).[1] She contends that because she had made sufficient progress and the children were with relatives, the evidence was insufficient to support the court's finding that termination was in the children's best interest. We affirm.

The statutory purpose of terminating parental rights is "to provide permanency in a juvenile's life" if returning the juvenile to the family home "is contrary to the juvenile's health, safety, or welfare and it appears . . . that a return to the family home cannot be

---

[1]The order also terminated the parental rights of Ronald Adamson, who consented to the termination of his parental rights to K.A. and is not a party to this appeal. The court found that parental rights had not attached regarding any putative father of C.C. and that no further notice was required under Ark. Code Ann. § 9-27-316(h)(4)(D) (Repl. 2015).

accomplished in a reasonable period of time as viewed from the juvenile's perspective."

Ark. Code Ann. § 9–27–341(a)(3) (Repl. 2015).  Under this subsection,

> (A) A parent's resumption of contact or overtures toward participating in the case plan or following the orders of the court following the permanency planning hearing and preceding the termination of parental rights hearing is an insufficient reason to not terminate parental rights.

Ark. Code Ann. § 9–27–341(a)(4).

Termination requires a determination that the parent is unfit and that termination is in the best interest of the child.  *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, at 2, 491 S.W.3d 153, 155.  The first step requires proof of one or more statutory grounds for termination; the second requires consideration of whether termination is in the juvenile's best interest.  Ark. Code Ann. § 9–27–341(b)(3)(B), (A).  Each step requires proof by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established.  *Id.*

The best-interest analysis includes consideration of the likelihood that the juvenile will be adopted and of the potential harm to the child if custody is returned to the parent. Ark. Code Ann. § 9–27–341(b)(3)(A).  The potential-harm analysis is to be conducted in broad terms; there is no requirement to find that actual harm would result.  *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722.  A circuit court is required to consider only potential harm to the child's health and safety that might come from continued contact with the parents.  *Id.*  In deciding whether it is in the juvenile's best interest to terminate parental rights, the court shall rely on the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing.  Ark.

Code Ann. § 9–27–341(a)(4)(B); *McMahan v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 556, at 4–5, 472 S.W.3d 518, 520.

The Arkansas Department of Human Services (DHS) became involved with this family on September 23, 2015, when it received a report alleging that Chandler was using drugs and had mental-health issues. DHS opened a protective-services case and on September 30, 2015, filed a petition for dependency-neglect. Because Chandler expressed a willingness to address her mental-health and substance-abuse issues and because she allowed the juveniles to live with her sister, DHS sought to provide services to prevent the juveniles' removal rather than exercise a hold on them. On October 26, 2015, however, DHS filed a petition for emergency custody and dependency-neglect when Chandler's sister made a phone call saying that Chandler had been arrested on drug charges. The court entered its ex parte order for emergency custody the same day, finding that immediate removal of the juveniles from Chandler was in the juveniles' best interest and was "necessary to protect the health and safety of said juveniles from immediate danger notwithstanding available services designed to prevent their removal." The order further stated,

> [T]he mother was arrested on October 23, 2015 and charged with possession of drugs with intent to deliver, possession of drug paraphernalia, and maintaining premises for drug activities, leaving the juveniles with no legal caretaker. The Court finds that the efforts made to prevent removal of the juveniles were reasonable based on the family and juveniles' needs and that the removal occurred during an emergency where immediate action was necessary to protect the health, safety, and welfare of the juveniles and where preventive services could no longer be provided. Therefore, the Arkansas Department of Human Services is deemed to have made reasonable efforts to prevent or eliminate the need for removing the juveniles from the home.

After conducting an adjudication hearing on December 14, 2015, the circuit court entered a March 28, 2016 order adjudicating K.A. and C.C. dependent-neglected because

of inadequate supervision by Chandler. Specifically, the court found that the juveniles were dependent-neglected due to Chandler's drug use and arrest on serious drug charges. The court noted that she had been transported to the adjudication hearing from the county jail. The court ordered her to obtain and maintain stable and appropriate housing, income, and transportation; complete parenting classes and visit the children regularly; submit to random drug screens and hair-follicle testing; submit to a drug-and-alcohol assessment and complete any recommended treatment; achieve and maintain total sobriety; submit to a psychological evaluation and comply with its recommendations; resolve pending criminal charges and comply with terms and conditions of any sentences; and immediately contact DHS upon her release from jail. The court found that continuation of custody in DHS was in the juveniles' best interest and was necessary to protect their health and safety. The case goal was reunification with a concurrent plan for adoption.

A review hearing was conducted on March 28, 2016. In the review order entered on August 18, 2016, the court found that the case plan was moving toward an appropriate permanency plan and that the goal of the case continued to be reunification. The order continued:

> 6. The Arkansas Department of Human Services has made reasonable efforts to provide family services and to finalize the permanent plan of the juveniles by providing services to achieve the goal of reunification. Specifically, the Department has provided foster care casework, transportation, and referrals for services. The case plan is moving towards an appropriate permanency plan.
>
> 7. The Court finds that the mother has not obtained or maintained stable or appropriate housing, employment, or transportation. She has not completed parenting classes, a psychological evaluation, or a drug and alcohol assessment. The mother just recently bonded out of the Sebastian County Jail, where she has been incarcerated since the juveniles' removal in October 2015. The mother is set to take

4

a plea in her criminal case next Wednesday and has been offered a sentence of four years in the Arkansas Department of Correction with six years suspended.

8. The mother is ordered to resolve her pending criminal charges and shall comply with the terms and conditions of her criminal sentence. She shall obtain and maintain stable and appropriate housing, income, and transportation. The mother shall submit to a drug and alcohol assessment and shall complete any recommended treatment. She shall remain clean and sober. The mother shall complete parenting classes. She shall undergo a psychological evaluation and shall comply with the recommendations thereof.

The court again found that continuation of custody in DHS was in the best interest of the children and necessary to protect their health and safety. The court ordered visitation to continue at least once weekly and gave DHS discretion to increase it.

The permanency-planning hearing was conducted on September 26, 2016. In its October 5, 2016 permanency-planning order, the court noted that Chandler had been released from prison on August 31, 2016. The court set concurrent goals of reunification and adoption:

The Court also authorizes a plan for adoption with the Department filing a petition for termination of parental rights because termination of parental rights may be in the best interest of the juveniles, the Department has not documented in the case plan a compelling reason why filing a petition for termination of parental rights is not in the best interest of the juveniles, and the Department has provided to the family of the juveniles, consistent with the time period in the case plan, such services as the Department deemed necessary for the safe return of the juveniles to the juveniles' home and the juveniles cannot safely return home at this time.

The court found that DHS had made reasonable efforts to finalize a permanency plan—specifically, by providing foster-care casework, transportation, and referrals for services. Further, the court found Chandler had failed to obtain stable or appropriate housing, income, or transportation; to complete a drug-and-alcohol assessment or treatment, a psychological evaluation, or domestic-violence classes; or to visit with the juveniles since

their removal. Custody remained with DHS, and visitation between Chandler and the juveniles was permitted "pursuant to the recommendations of the juveniles' treatment providers."

On December 22, 2016, DHS filed its petition to terminate Chandler's parental rights. At the end of the termination hearing, held on January 23, 2017, the circuit court found that termination was in the best interest of the juveniles and—due to instability with housing, incarceration, drug-and-alcohol use, and domestic violence—found a risk of potential harm to their health and safety if they were returned home.

The court's order terminating Chandler's parental rights included a finding of three statutory grounds (failure to remedy, subsequent factors, and aggravated circumstances) and a determination that termination was in the juveniles' best interest. The best-interest determination included findings that the children are adoptable and that they would be at risk of physical, mental, and emotional harm if they were returned to Chandler. The court found that she had not cared for the juveniles for most of their lives as a result of her long history of drug use and incarceration; that while they were in her care, she had "engaged in criminal behavior and exposed the juveniles to domestic violence between her and Christopher Sivage, whom [she] married after the juveniles' removal"; and that facts that support the statutory grounds for termination also showed a great risk of harm if the juveniles were returned to her. The order included these facts to support the statutory grounds for termination:

> Tiffany Chandler has not remedied the conditions that caused the juveniles' removal and she has not completed the services on her case plan. The mother was previously in drug court for approximately three-four years and completed drug treatment at a Regional Correctional Facility during that time. She then completed residential

treatment at Gateway. The mother ultimately relapsed after these treatment programs which resulted in the juveniles' removal in this instance. She is currently participating in outpatient treatment through Harbor House but admits to using prescription medication that was not prescribed to her and alcohol. The mother has not demonstrated that she has achieved and maintained sobriety. The Department has provided the mother with a case plan and referrals for services required to meet the goals thereof, and she has failed to complete these services or demonstrate that she has remedied her circumstances.

. . . .

Since her release [from prison], she was arrested in Arkoma, Oklahoma for driving while intoxicated and currently has a warrant for her arrest. She also admitted to leaving the scene of an automobile accident, which is a crime, without notifying law enforcement because she was afraid of the consequences. The mother has not successfully resolved her legal issues and, even though she served time in prison for the offenses which resulted in the juveniles' removal, she has continued to engage in criminal behavior and the warrant currently out for her arrest demonstrates her incapacity or indifference to remedying this issue.

Chandler does not challenge the grounds for termination or the finding of adoptability. Instead, she argues that she had made sufficient progress so that she was not a danger to her children and that their placements with relatives eliminated the need to terminate her parental rights.

We review termination–of–parental rights cases de novo. *Norton v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 285. Our inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Houseman*, *supra*. The reviewing court defers to the circuit court because of its superior opportunity to observe the parties and to judge the credibility of witnesses. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. 356, at 7.

Chandler points to particular exhibits and testimony at the termination hearing. Sign-in sheets show that she enrolled with NA/AA two weeks after her August 31, 2016 release from prison and attended meetings regularly. A counselor's January 18, 2017 letter from Harbor House, Inc., states that Chandler began individual and group therapy on December 6, 2016, and regularly attended; that a January 11, 2017 drug screen was negative for substances other than her prescribed medications; that she continued "to devote herself to committed actions and using tools . . . gained in the program"; and that her progress continued to excel. There was also January 2017 documentation that she had completed domestic-violence and parenting classes.

Chandler points to her testimony at the termination hearing in which she candidly acknowledged "all of her mistakes"—relapsing after the death of her mother; getting in trouble for drinking the past October and drinking a couple of wine coolers on New Year's Eve; having a wreck in the beginning of October, failing to remain on the scene because she was scared, and receiving pain medication afterward; and having a "last relapse with illegal drugs." She asserts that she had not used illegal drugs for two and a half months at the time of the hearing; had obtained transportation, employment, and a home; had completed SAPL drug-treatment classes and was attending NA/AA meetings; had started outpatient treatment at Harbor House on her own after her drug relapse and October drinking-related arrest; and was receiving mental-health treatment and counseling at Valley Behavior Health System for help with her depression and other issues. She points to her testimony that she wanted sobriety more than anything, but really wanted her kids back. She complains that she was unable to visit her children because DHS did not permit it and

never discussed it with her counselor and that she had difficulties maintaining contact with her caseworker. She acknowledges that her caseworker and the CASA advocate did not believe that she had made sufficient progress and thought her rights should be terminated, but she asserts that she made significant progress without DHS help after her release from prison and while her children were placed with relatives. She relies on her testimony that she checked on her children by talking with her aunt, who lived across the street from where they had been placed, and that it was her understanding that this relative home was to be a long-term placement.

Chandler directs our attention to termination cases in which we reversed the circuit court's decision. In *Ivers v. Arkansas Department of Human Services*, 98 Ark. App. 57, 250 S.W.3d 279 (2007), the father was getting inpatient drug treatment and had taken responsibility for his addiction; it was mere speculation for the circuit court to find that his past would necessarily dictate the future, especially considering his general compliance with the case plan. In *Rhine v. Arkansas Department of Human Services*, 2011 Ark. App. 649, at 10–11, 386 S.W.3d 577, 583, although the father was not a perfect parent and did not flawlessly comply with every order, we reversed the termination of his parental rights because his "slight lapses in judgment" were not evidence of introducing harm or risk of potential harm into the child's life. In *Prows v. Arkansas Department of Human Services*, 102 Ark. App. 205, 208–10, 283 S.W.3d 637, 639–40 (2008), where the court stated that it could not consider the parent's recent mental stability, we remanded for consideration of this evidence in deciding the termination issue. *See also Cranford v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 211, at 10, 378 S.W.3d 851, 857 (holding that best-interest finding

9

was clearly erroneous where there was no evidence of either parent physically abusing or harming the child or being a threat to do so in the future).

Chandler asserts that she never caused physical harm to the children once the case began; she had contact with her family throughout the case; she "was compliant with the court orders"; and the children were placed with her relatives and could permanently remain in that placement. She concludes that their permanency was not at risk. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383 (reversing a termination decision where children had a permanent home with their mother, their relationship with paternal grandparents was a stable influence, and a no-contact order with father had not been considered); *Cranford*, *supra* (time was not of the essence where child was in the custody of relative caregiver who thought that the child would have regular visits with the parents and where the caseworker testified that the custody placement was excellent for the child).

Here, we find no clear error in the circuit court's determination that terminating Chandler's parental rights was in the juveniles' best interest. Just a month after DHS filed its dependency-neglect petition due to Chandler's drug use, she was arrested on drug charges, and the court ordered that the children be placed in DHS's emergency custody. The adjudication hearing was held two months later, and the children were adjudicated dependent-neglected because of Chandler's lack of supervision, drug use, and arrest. At the review hearing three months later, Chandler was not complying with previous orders of the court, had just recently bonded out of the county jail where she had been incarcerated on drug charges, and was "set to take a plea in her criminal case next Wednesday and has been offered a sentence of four years in the Arkansas Department of Correction with six years

suspended." When the permanency-planning hearing took place six months later, Chandler

had been out of prison only twenty-six days. The circuit court found that she had "been

incarcerated for most of the pendency of the case."

The termination hearing was held four months later. Speaking from the bench, the

court made the following findings:

> The drug and alcohol use has been ongoing for several years and this most recently as New Year's Eve where the mother testified she was drinking. I believe there was also testimony that the mother went to the doctor about two weeks ago and received a prescription for opiates without notifying the physician that she has a prior use of or abuse of drugs and/or alcohol.
> . . . .
> The mother has had ample time to maintain sobriety but hasn't. And like I said previously, she was taking opiates approximately two weeks ago without notifying the doctors of her prior drug problems. She was also using alcohol on New Year's Eve. She had a DWI in October of 2016.
>
> And another thing that concerns the Court is the mother testified that she's been in a basically hit-and-run accident where she was injured. And this is a felony.
>
> Leaving the scene of a personal injury accident and not reporting it to police is a felony in Arkansas. So although the mother wasn't caught for that and wasn't arrested for it, she's still committing crimes within the state. She has active warrants outstanding in Arkoma; she's currently working on those. . . . .
> . . . .
> The mother has had ample time to complete her drug and alcohol problems. She's spent three-and-a-half or four years in a drug court program that's typically a two-year program. She went to the regional correctional facility where she received drug treatment during that time. That program is specifically designed for drug treatment. She's been in Gateway. She's been in Harbor House. She's been in multiple treatment facilities and she's still using drugs and alcohol, and she's not reporting to her providers that she has a prior history of drug and alcohol abuse.

We hold that the circuit court did not clearly err in finding a risk of potential harm

to the juveniles' health and safety if they were returned to Chandler. After the case began,

Chandler was arrested and convicted of serious drug charges and was incarcerated for them.

She testified at the termination hearing that she had been in drug court for three and a half

11

years from 2010 until 2014, when her choice of drugs had been methamphetamine and THC; she was using opiates a few months before her arrest in October 2015 on the drug charges that led to DHS taking emergency custody of K.A. and C.C.; she did not mention her drug addiction to medical personnel when she received hydrocodone for injuries she sustained when she wrecked her car in early October 2016; she received a DWI in late October; and she drank wine coolers on New Year's Eve, less than four weeks before the termination hearing. The circuit court was free to interpret her testimony, along with other evidence in this case, as showing a failure to progress in solving her drug problems and to achieve sobriety, which was the underlying cause of potential harm to the juveniles. Her arguments that she had made "sufficient progress" are arguments that go to the weight of the evidence and to the credibility of the witnesses, matters that were for the circuit court to determine.

Chandler also argues that the children were not at risk because they were placed with relatives, where they could remain permanently. She asserts that the children could have been protected by a grant of custody to her relatives, perhaps with a no-contact order. DHS responds that this argument is pure speculation. We agree. The record reveals that the children were in a foster-care placement with relatives rather than in permanent custody. There was no testimony by a relative or anyone else that a relative had stepped forward for permanent custody. Nor was there other evidence to support Chandler's understanding that the placement with relatives was to be permanent. Thus, the circuit court did not clearly err in finding the risk of potential harm to the children despite their foster-care placement with relatives.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.