RITA W. GRUBER, Chief Judge *553 Appellant, Christi Drane, appeals from two orders of the Madison County Circuit Court resulting in the termination of her parental rights to her two children: SW, born October 16, 2008; and AW, born May 20, 2010. She appeals from the permanency-planning order, contending that the court erred in changing the goal from reunification to adoption, and she challenges both the circuit court's findings of statutory grounds and its best-interest determination in the termination order. We affirm the circuit court's orders.
I. Procedural History
On June 16, 2017, the Arkansas Department of Human Services (DHS) removed the children from Christi's custody and on June 20 filed a petition for emergency custody and dependency-neglect. DHS alleged that the children were dependent-neglected because Christi had allowed her husband, George Drane, the children's stepfather, to return to the family home after SW alleged that he had touched her inappropriately. DHS became involved with the family after the sexual-abuse allegation had been made and found to be true by the Crimes Against Children Division of the Arkansas State Police (CACD) in November 2016. Christi was advised at that time to obtain an order of protection against George and for George to move out of the home or for Christi to take the children and move elsewhere. Christi filed for an order of protection on November 18, 2016, but requested that the order be dismissed on December 20, 2016, and George moved back into the family home.
DHS received a call to the hotline in June 2017 that Christi had allowed George to return to the home, prompting the emergency hold based on Christi's failure to protect. In the affidavit attached to the petition for emergency custody, DHS outlined its history with George, which included true findings for child maltreatment in 1996 and 2010. In an adjudication order entered on August 16, 2017, the circuit court adjudicated the children dependent-neglected as a result of neglect, parental unfitness, and sexual abuse. The court specifically found the allegations by SW against George to be true and found that Christi had failed to protect the children. The court set reunification as the goal of the case but reminded Christi that the "clock is ticking and there is a limited amount of time" for her to participate in the case plan and correct the conditions that caused removal of the children, warning her that failure to correct the conditions could result in termination of her parental rights.
The court held review hearings on December 21, 2017, and April 27, 2018, finding at both hearings that the children could not safely be returned to Christi because she continued to live with and be married to George and did not believe that SW had been sexually abused. After the April review hearing, the court added a concurrent goal of adoption.
II. Permanency-Planning Hearing
On June 1, 2018, the court held a permanency-planning hearing. Catherine Piercy, SW's professional counselor, testified that she had seen SW periodically for years, since SW was in preschool, and had been *554 seeing her regularly for over a year regarding emotional issues from the sexual abuse. She said that she also met periodically with Christi to counsel her on family and parenting issues. Ms. Piercy testified that it would be traumatic for SW to return to a home where George lives and would signal to her that she would not be protected. She testified that SW was aware that her mother did not believe her about the abuse. Ms. Piercy said SW continued to need therapy but had made a great deal of progress on both behavioral and emotional issues. Ms. Piercy also said that Christi had not recognized SW's issues arising from the trauma and was still "pretty clear" in her belief that it did not happen, indicating that Christi had mentioned that someone else, not George, might have sexually abused SW in the past. She testified that she was not certain that Christi recognized situations that might not be safe.
III. Termination
At the termination hearing held on September 28, 2018, the court-appointed special advocate (CASA) volunteer and the DHS caseworker, Ms. Widner, both recommended that Christi's parental rights be terminated because she had not demonstrated that she could protect the children and keep them safe. The CASA volunteer testified that Christi's relationship with George had been long and "drawn out" and that she had not filed for divorce until August 2018, two months after the permanency-planning hearing. She also testified that George's daughter had been living with Christi through the summer.
The court entered an order on October 25, 2018, terminating Christi's parental rights. The court found that DHS had proved four grounds for termination by clear and convincing evidence: (1) the children had been adjudicated dependent-neglected, had continued out of the home of the parent for twelve months, and despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that prevented the children from safely being placed in the parent's home, the parent had failed to remedy the conditions; (2) the court had found the children dependent-neglected as a result of sexual abuse that was perpetrated by the children's parent or parents or stepparent; (3) other factors arose subsequent to the filing of the original petition that demonstrated placement of the children with the parent was contrary to the their health, safety, or welfare, and despite the offer of appropriate family services, the parent manifested incapacity or indifference to remedying the subsequent issues; and (4) aggravated circumstances because there was little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) , (vi), (vii), (ix)(a)(3) (Supp. 2017).
IV. Points on Appeal
We turn first to Christi's challenges to the termination order. We review termination-of-parental-rights cases de novo. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. Pine v. Ark. Dep't of Human Servs. , 2010 Ark. App. 781, at 9-10, 379 S.W.3d 703, 708-09. Adoptability is not an essential element but is rather a factor that the circuit court must consider. Tucker v. Ark. Dep't of Human Servs. , 2011 Ark. App. 430, at 7, 389 S.W.3d 1, 4-5. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. Pine , 2010 Ark. App. 781, at 11, 379 S.W.3d at 709. The potential-harm analysis is to be conducted in broad terms. Shawkey v. Ark. Dep't of Human Servs. , 2017 Ark. App. 2, at 5, 510 S.W.3d 803, 806. It is the "best interest" finding that must be supported by clear and convincing *556 evidence. Id. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997). Credibility determinations are left to the fact-finder. Kerr v. Ark. Dep't of Human Servs. , 2016 Ark. App. 271, at 6, 493 S.W.3d 342, 346. Finally, the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).
Christi challenges all four statutory grounds for termination found by the circuit court. Proof of only one statutory ground is sufficient to terminate parental rights. Contreras v. Ark. Dep't of Human Servs. , 2015 Ark. App. 604, at 5, 474 S.W.3d 510, 514. We turn first to the last ground found by the court: aggravated circumstances. Christi argues that she had separated from George, filed for divorce, obtained appropriate employment and housing, and demonstrated the ability to care for and protect her children at the time of the termination hearing. She contends that the circuit court's determination that there is little likelihood that additional services will result in successful reunification is based on speculation and is clearly erroneous.
Christi also challenges the circuit court's conclusion that it was in the children's best interest to terminate her parental rights. She argues that the evidence was insufficient to support either adoptability or potential harm. Neither adoptability nor potential harm is an essential element; rather, they are factors that the circuit court must consider. Tucker , 2011 Ark. App. 430, at 7, 389 S.W.3d at 4-5. It is the "best interest" finding that must be supported by clear and convincing evidence. Shawkey , 2017 Ark. App. 2, at 5, 510 S.W.3d at 806.
*557 The Juvenile Code does not require a "specific quantum" of evidence to support a circuit court's finding regarding adoptability; it requires only that if an adoptability finding is made, evidence must exist to support it. Cole v. Ark. Dep't of Human Servs. , 2018 Ark. App. 121, at 5, 543 S.W.3d 540, 543. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. Strickland v. Ark. Dep't of Human Servs. , 2018 Ark. App. 608, at 10, 567 S.W.3d 870, 876. Here, the caseworker testified that it was reasonably likely that both SW and AW would be adopted and that neither child has medical or behavioral conditions that would prevent adoption. Christi contends that the court ignored the evidence that the children were in their third placement and that both children had previous behavioral issues. Testimony at trial demonstrated that both children were doing well in school and that SW had come a long way and made "extreme progress" over the year. The caseworker testified that AW had "zero behavioral concerns" in his current placement. Credibility is for the circuit court, and we give the court a high degree of deference to resolve any conflicts in the evidence. Cole , 2018 Ark. App. 121, at 5, 543 S.W.3d at 543.
The best-interest analysis also includes consideration of the potential harm to the child if custody is returned to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). The potential-harm analysis is to be conducted in broad terms; there is no requirement to find that actual harm would result. Dowdy v. Ark. Dep't of Human Servs. , 2009 Ark. App. 180, at 13, 314 S.W.3d 722, 728. In deciding whether it is in the children's best interest to terminate parental rights, the circuit court relies on the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing. Chandler-Sivage v. Ark. Dep't of Human Servs. , 2017 Ark. App. 544, at 2-3, 532 S.W.3d 113, 115.
Christi argues on appeal that the court's consideration of potential harm relied on speculation because Christi testified that she had separated from George, was no longer in a relationship with him, and had filed for divorce. The circuit court was viewing Christi's compliance in the entire case. Throughout the case, including her testimony at the termination hearing, Christi refused to acknowledge that George had sexually abused SW. She was still married to George at the hearing. The court specifically found that Christi's past actions were the best indicator of her future behavior. We hold that the circuit court's finding that it was in the children's best interest to terminate parental rights is not clearly erroneous.
Finally, we turn to Christi's argument that the circuit court erred in changing the case goal from reunification to termination and adoption in the permanency-planning order. She argues that the preferred statutory goal is for the circuit court to authorize a plan to place the children back with a parent if the parent can show that she is complying with the established case plan and court orders, making significant measurable progress toward remedying the conditions that caused removal from the home, and the children can be returned within three months. See Ark. Code Ann. § 9-27-338(c)(3) (Supp. 2017). We review findings in dependency-neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. Gyalog v. Ark. Dep't of Human Servs. , 2015 Ark. App. 302, at 6, 461 S.W.3d 734, 738.
Affirmed.