Cite as 2020 Ark. App. 169

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-19-887

| | | |
|---|---|---|
| | | **Opinion Delivered:** March 11, 2020 |
| SHELBY PHILLIPS | | |
| | APPELLANT | APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44JV-18-50] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE STACEY ZIMMERMAN, JUDGE |
| | APPELLEES | AFFIRMED |

## BART F. VIRDEN, Judge

The Madison County Circuit Court terminated the parental rights of appellant Shelby Phillips (formerly Watkins) to her children, K.R. and B.P.[1] Shelby does not challenge the grounds supporting termination; rather, she argues that there was insufficient evidence that termination was in the children's best interest. We affirm.

### I. *Procedural History and Background*

On May 25, 2018, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect as to Shelby's children after the Madison County Sheriff's Office executed a search warrant at a home where Shelby was living with her children, her then boyfriend Daniel Phillips, and Daniel's parents. Deputies

---

[1]The trial court also terminated the parental rights of Daniel Phillips, putative father of B.P., but he is not part of this appeal. Although James Risenhoover was noted to be K.R.'s putative father, DHS had not yet petitioned to terminate his parental rights.

found drugs, drug paraphernalia, a firearm, and explosives. It was noted in DHS's petition that in 2014 Shelby had a case with DHS involving Garrett's Law and had received drug treatment. Shelby admitted that she had recently used methamphetamine, marijuana, Roxicodone, and morphine. The family-services worker also noted that K.R.'s and B.P.'s teeth were black.[2] Because Shelby was arrested on criminal charges, including first-degree endangering the welfare of a minor, the children were taken into DHS custody.

On the same day, the trial court entered an ex parte order for emergency custody. The trial court later found that probable cause existed to issue that order and that the children should remain in DHS custody. Shelby was permitted to have supervised visits with her children. The parents were subject to standard court orders, and DHS was ordered to provide services to the family. The trial court found that the children had tested positive for methamphetamine. They were later adjudicated dependent-neglected because of neglect and parental unfitness. The trial court ordered DHS to ensure that both children got counseling because they had been hoarding and gorging on food.

In a review order entered December 20, the trial court found, among other things, that Shelby was not in compliance with the DHS case plan and court orders. The trial court found that DHS had made reasonable efforts to achieve the goal of reunification, including a referral for a psychological evaluation, two referrals for a drug-and-alcohol assessment, a counseling referral, medical and dental services, staffings, visitations, drug screens, a hair-follicle test, clothing, referrals for parenting classes and a twelve-step program, and home

---

[2]A court report indicates that the children subsequently had extensive dental surgeries; K.R. needed seven crowns, five extractions, and one filling, while B.P. needed twenty crowns.

2

visits. The trial court also found that Daniel was under investigation by the Arkansas State Police Crimes Against Children Division for sexual abuse of K.R. and that Shelby was under investigation for failing to protect her daughter. The trial court ordered that Shelby have "no contact whatsoever" with her children. Noting Shelby's testimony that she had last used methamphetamine two months ago—while she was six months pregnant, the trial court ordered Shelby to complete inpatient drug treatment.

On January 28, 2019, DHS and the attorney ad litem (AAL) filed a joint motion to cease reunification services to the parents, alleging in part that Shelby had married Daniel despite K.R.'s disclosure that he had sexually abused her. Moreover, Shelby continued to use drugs even after learning that she was pregnant with Daniel's baby. DHS and the AAL further alleged that B.P. had recently made claims of being sexually abused in the parents' home. The trial court granted the motion on aggravated-circumstances grounds.

In a permanency-planning order, the trial court established the goal of adoption and found that Shelby had not complied with most of the court orders and case plan in that she had not obtained stable housing and employment, had not participated in drug screens and counseling, had not demonstrated an ability to keep her children safe from harm, had not maintained contact with her caseworker, and had not resolved her criminal charges.

DHS filed a petition for termination of parental rights. Following a hearing, the trial court entered an order terminating Shelby's parental rights to K.R. and B.P. on the following grounds: Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2019) (failure to remedy); Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (subsequent factors); and Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)* (aggravated circumstances—little likelihood). Under these grounds, the trial court found that

Mother has TRUE findings for failure to protect, inadequate supervision, medical neglect, and threat of harm. Mother continues to state that she doesn't know whether Daniel sexually assaulted her daughter, [K.R.], despite [K.R.'s] stating that Daniel did sexually assault her and despite the TRUE findings for sexual abuse with Daniel listed as the offender and [K.R.] listed as the victim. Mother has failed to accept responsibility for the reasons that her children are in care and Mother is currently married to Daniel. The Court finds that Mother has never once been in full compliance with court orders and Mother did not do anything in this case until she gave birth to the juveniles' sibling, [G.P.] In fact, there was a different judge at the April 26, 2019 hearing and he made the same findings that I have.

The trial court also found that termination of parental rights was in the children's best interest. The trial court found that, despite the "major trauma" the children had experienced, they are adoptable. The trial court further found potential harm, noting that "[t]his Court has no doubt at all that if the juveniles were returned to [Shelby, they] would not recover. . . . Enough is enough." Shelby filed a timely notice of appeal.[3]

## II. *Standard of Review*

We review termination–of–parental–rights cases de novo. *Hall v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 4. An order forever terminating parental rights must be based on a finding by clear and convincing evidence that termination is in the children's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). The trial court must consider the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm that could be caused if the children are returned to a parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The trial court must also find by clear and convincing evidence one or more grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it

---

[3]In an amended notice of appeal, Shelby indicated that she was also appealing the no-reunification-services order, but that appeal has been abandoned.

is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the trial court's finding is clearly erroneous. *McGaugh v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 485, 505 S.W.3d 227. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* We defer to the trial court's superior opportunity to observe the parties and judge the credibility of witnesses. *Id.*

III. *Discussion of Best-Interest Analysis*

A. Potential Harm

Shelby argues that there was a complete lack of evidence on the potential-harm "element." Potential harm, as well as adoptability, is merely a factor to be considered—it is not an element of the cause of action and need not be established by clear and convincing evidence. *Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251. It is the best-interest finding that must be supported by clear and convincing evidence. *Id.* The harm referred to in the statute is "potential" harm; the trial court is not required to find that actual harm will result or to affirmatively identify a potential harm. *Id.* Moreover, evidence on this factor must be viewed in a forward-looking manner and considered in broad terms. *Id.* A parent's past behavior is often a good indicator of future behavior and may be viewed as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Rickman v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 261, 548 S.W.3d 861.

5

At the time of the termination hearing, Shelby stated that she did not know whether Daniel had sexually assaulted K.R. She clearly did not believe her daughter's allegations even after Daniel was convicted and sentenced to serve twenty years in prison. Moreover, Shelby was still married to Daniel, although she testified that she had filed for divorce. We also note that Shelby introduced into evidence a folder of photos, many of which depicted Daniel posing with the children. *See Martin v. Ark. Dep't of Human Servs.*, 2017 Ark. 115, 515 S.W.3d 599 (affirming termination of father's parental rights because he did not obtain divorce from children's abuser until day of termination hearing and was still hesitant to believe ex-wife had anything to do with children's injuries even after she had pleaded guilty to felony-battery charge).

Shelby contends that, although she struggled throughout the case, "her circumstances had changed drastically in the interim period between the NRS hearing and termination, and it is clear from the record that termination was not in the children's best interest." In deciding whether it is in the children's best interest to terminate parental rights, the trial court relies on the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing. *Drane v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 256, 576 S.W.3d 550. Shelby concedes that the record demonstrates she was not engaged in the case until after G.P. was born, but she states that her eleventh-hour efforts should not automatically result in termination. Shelby relies on *Prows v. Arkansas Department of Human Services*, 102 Ark. App. 205, 283 S.W.3d 637 (2008), in which we noted that the Juvenile Code requires the trial court to consider recent improvements. That case is distinguishable. In *Prows*, we reversed the termination decision because the trial court made an error of law in stating that the mother's recent stability *could not play a role* in the

termination decision. Here, there is no indication that the trial court refused to consider Shelby's recent improvements; those improvements simply did not outweigh the potential harm that Shelby posed to her children. *Blasingame v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 71, 542 S.W.3d 873 (recognizing that we will not reweigh the evidence on appeal).

Shelby points to her ability to retain custody of G.P. and suggests that, if she poses no harm to G.P., she would not pose any harm to K.R. and B.P. Similar arguments have been rejected by this court. *See Brown v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 370, 584 S.W.3d 276; *Black v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 518, 565 S.W.3d 518; *Weatherspoon v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 104, 426 S.W.3d 520; *Dominguez v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 404. This court has said that "when making its best-interest analysis, the trial court must make an individual determination whether termination is in each child's best interest and cannot treat the children as an amorphous group in which the best interest of one will meet the interests of all." *Brown*, 2019 Ark. App. 370, at 10, 584 S.W.3d at 282. Shelby also asserts that there was absolutely no evidence to support the trial court's finding that the children's extreme mental-health issues were her fault because neither the children's therapists nor the foster parents testified. Shelby does not cite any authority for the proposition that testimony from therapists and foster parents is required, and we know of no such authority. *McKinney v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 140, 544 S.W.3d 101.

The same evidence used to support statutory grounds can also support a potential-harm finding. *Black, supra.* Here, Shelby does not challenge any of the three grounds found by the trial court. Potential harm can also be shown by a parent's failure to comply with the court's orders and a parent's continuing to use drugs during a dependency-neglect case. *Id.*

7

Shelby failed to comply with the court's orders in the beginning of the case, and she continued to use drugs, even after she became pregnant with G.P.

## B. Adoptability

Shelby argues that foster care has not served her children well in that their behaviors had regressed to the point that the foster parents asked that they be moved. They were then removed from the home, where they had lived for a year, and separated. Shelby contends that "there would be no harm in reversing the termination order, extending additional time and family therapy services to Shelby and her children, in an effort to provide a much more viable option to these children than multiple stranger placements, separation, mental health treatment and medications, and a slim hope that adoption will someday be available."

Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483. Moreover, the child's need for permanency and stability may override the parent's request for additional time to improve the parent's circumstances. *Chaffin*, *supra*.

A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Strickland v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 608, 567 S.W.3d 870. There is no requirement that an adoption specialist testify at the termination hearing or that the process of permanent placement be completed at the time of the termination hearing. *Id*. Evidence that adoptive parents have been found is not required, and neither is evidence that proves the child will be adopted. *Atwood v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 448, 588 S.W.3d 48.

Whitney Widner, a DHS family-services worker, testified that it is reasonably likely that K.R. and B.P. will be adopted and that the goal is to have them adopted together. She described K.R.'s issues and said that they would not prevent her from being adopted but that she needs extensive family counseling with any potential adoptive family before adoption can occur. Regarding B.P., Widner said that he does have major medical and behavioral needs. She testified, however, that both children could overcome their negative behaviors if given a safe environment and time to build a trusting relationship with a caregiver. *See, e.g.*, *Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004) (finding sufficient caseworker's testimony that, although children had issues to work through, both were adoptable).

From our review of the record in this case, we cannot say that the trial court clearly erred in finding that termination of Shelby's parental rights was in the children's best interest.

Affirmed.

GRUBER, C.J., and KLAPPENBACH, J., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.