Cite as 2020 Ark. App. 494

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-20-382

| | |
|---|---|
| STEEVE LOUISSAINT<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br><br><br>APPELLEES | **Opinion Delivered** October 28, 2020<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26JV-18-385]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Steeve Louissaint appeals from the March 2020 order of the Garland County Circuit Court terminating his parental rights to his three children, who were all under the age of seven: daughter JL, daughter SL, and son SL1.[1]  On appeal, appellant argues that the circuit court (1) clearly erred in finding that the Arkansas Department of Human Services (DHS) proved any statutory ground for termination because DHS failed to provide meaningful reunification services to him, and (2) clearly erred in finding that it was in the children's best interest to terminate his parental right because DHS failed to prove that there was potential harm to the children if they were placed in appellant's custody.  We disagree with his arguments and affirm.

---

[1]The parental rights of the children's mother, Elizabeth Louissaint, were also terminated, but she does not appeal.  The mother was found, among other statutory grounds, to have abandoned the children.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, 491 S.W.3d 153. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* Statutory grounds and a best-interest finding must be proved by clear and convincing evidence, which is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Id.* We review termination-of-parental-rights cases de novo. *Id.* The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A juvenile's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, 474 S.W.3d 510.

In 2011, DHS made a "true" finding against appellant for having subjected two older children, RL and XL, to physical abuse. In July 2018, DHS opened a protective-services case concerning the three younger children in the present case due to the mother's drug use. The children were taken into emergency custody of DHS in December 2018. The children were living with their mother in Hot Springs. The home was environmentally unsafe (eight or more poorly cared for dogs and cats in the home; animal feces throughout

the home; rotten food in the sink and on the kitchen counter; utilities had been turned off; the children were inappropriately clothed, dirty, and malodorous).  Although appellant and the mother were married, they did not live together or have a relationship.  Appellant was living in Hollywood, Florida.  After the children's removal, the circuit court appointed an attorney to represent appellant.

At a January 2019 adjudication hearing, the children were found to be dependent–neglected; appellant's attorney appeared, but appellant did not.  The circuit court made no findings concerning appellant because he had not yet appeared before the court nor presented any evidence of his fitness.  Appellant was ordered to view "The Clock is Ticking" video, cooperate and stay in contact with DHS, and demonstrate his fitness to parent these children.  At an April 2019 review hearing, appellant's attorney appeared, but appellant did not.  The circuit court found that appellant had not had contact with DHS since March 2019, had not complied with the case plan, and had failed to demonstrate progress toward the goal of reunification.  At a July 2019 review hearing, appellant's attorney appeared; appellant did not appear.  The circuit court found that appellant had partially complied with the case plan but had not made progress; appellant continued to live in Florida but did not have suitable housing.  Appellant did, however, have weekly supervised telephone visitation with the children, who were together in foster care.  In each of the three preceding orders, the circuit court found that DHS had made reasonable efforts to provide family services to achieve reunification, including visitation and case management, among other services.

At a November 2019 permanency-planning hearing, appellant's attorney appeared, but appellant did not. The circuit court found that appellant had not complied with the case plan, he had not demonstrated progress, and he had only participated in phone visitation. The circuit court again made a "reasonable efforts" finding. The goal was changed to termination of parental rights. DHS filed a petition to terminate parental rights alleging multiple statutory grounds against appellant, including having subjected the juveniles to aggravated circumstances in that there was little likelihood that services to the family would result in successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)* (Supp. 2019). DHS also alleged that there was potential harm to the children if appellant took custody of the children.

The termination hearing was conducted in March 2020. Appellant's attorney appeared. Appellant appeared by telephone. The case worker testified that although she had had contact with appellant beginning in January 2019 and told him about the need for him to have stable housing and income, appellant never made progress and had lived for a while in a homeless shelter. She said that appellant had participated in some telephone visitation, but he had not had any contact with his children since late January 2020.

Appellant testified that he had lived in a homeless shelter from August 2019 through December 2019, but since the end of December 2019, he had lived in Pembroke Park, Florida, with his aunt and two cousins at his aunt's leased apartment; he slept on the couch. He admittedly had not notified DHS of this new address until a few days before the termination hearing. He said he had been working for the previous six months and had just bought a bunk bed and a television for his children to use at his aunt's apartment. He said

4

he could not afford to travel to Arkansas and keep up with his other expenses. Appellant wanted a little extra time to work toward gaining custody, and he asked at the termination hearing that the court order a home study.

In the termination-of-parental-rights order entered fifteen months after the children had come into DHS custody, the circuit court found that appellant would not or could not appropriately care for his children, that he lacked effort toward, or interest, gaining custody, and that these facts presented potential harm to the children if they were placed in his custody. Among the statutory grounds that the circuit court found DHS had proved against appellant was that appellant subjected his children to "aggravated circumstances" in that there was little likelihood that continued services to the family would result in successful reunification. The order noted that appellant "never demonstrated the ability to properly care for the juveniles or provide for their health, safety, or welfare," continued to live out of state and lacked stable housing. The circuit court again made a "reasonable efforts" finding. The circuit court found that the foregoing supported that the children would be at risk of harm if returned to their parents. This appeal followed.

Appellant first argues that DHS provided him no services except telephone visitation, so there could be no finding that DHS had made reasonable or meaningful efforts toward the children being placed with their father. We hold that appellant has failed to demonstrate that the circuit court committed reversible error.

In the Juvenile Code, "aggravated circumstances" is defined to exist in certain circumstances that include when "a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification[.]" Ark.

Code Ann. § 9-27-303(6)(A).[2] The circuit court made this determination. A finding of aggravated circumstances does not require DHS to prove that meaningful services toward reunification were provided. *See Cloninger v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 282; *Willis v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 559, 538 S.W.3d 842. Nevertheless, in this case, (1) the circuit court repeatedly entered orders prior to the termination hearing that DHS had made reasonable efforts toward family reunification; (2) appellant was represented by counsel, and no particular service was ever requested until the termination hearing (a request for a home study); and (3) appellant never came to Arkansas to visit his children but was provided telephone visitation, which he discontinued in the weeks leading up to termination of his parental rights. *Compare Yarbrough v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 429, 501 S.W.3d 839. Considering these circumstances, we are not left with a distinct and firm impression that the circuit court made a mistake concerning DHS's "reasonable efforts" or whether DHS proved the statutory ground of "aggravated circumstances."

Appellant also argues that the circuit court committed reversible error by finding that termination of appellant's parental rights was in his children's best interest because there was insufficient evidence of potential harm to the children if they were placed with him. We disagree. Potential harm is merely a factor to be considered; it is not an element of the cause of action and need not be established by clear and convincing evidence. *Phillips v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 169, 596 S.W.3d 91. The circuit court is not

---

[2]Contrary to appellant's argument that the circuit court had to find that *further* services would not result in reunification, the statute speaks in terms of "services," not "further services."

required to find that actual harm will result or to affirmatively identify a potential harm. *Id*. Moreover, evidence on this factor must be viewed in a forward-looking manner and considered in broad terms. *Id*. A parent's past behavior is often a good indicator of future behavior and may be viewed as a predictor of likely potential harm. *Id*. In deciding whether it is in the children's best interest to terminate parental rights, the Juvenile Code requires that the circuit court consider recent improvements, but the circuit court also relies on the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing. *Id*.

Appellant was represented by counsel for fifteen months and had been informed by DHS what he would need to do to gain custody of his children; DHS provided him with telephone visitation, which appellant ceased exercising; appellant never came to Arkansas see his children during the case and had never met his son in person; and appellant failed to provide stable, suitable, and sufficient income and housing to properly care for his children. After de novo review of this record, we hold that this evidence supports the circuit court's finding that termination of appellant's parental rights was in the children's best interest.

Affirmed.

GRUBER, C.J., and ABRAMSON, J., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.